IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| CHRISTOPHER SCOTT, | ) |
| Plaintiff, | ) ) ) |
| -vs- | ) No. 22-CV-3116-SLD |
| WATERSTRAAT, *et al*. | ) ) ) |
| Defendants. | ) |

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

NOW COME Defendants, BRITTANY GREENE, RANDELL HETTINGER, JAMES ROBINSON, JUSTIN HAMMERS, and RICKY FOREMAN, by and through their attorney, KWAME RAOUL, Attorney General for the State of Illinois, and hereby move for Summary Judgment, with incorporated memorandum of law, pursuant to Fed. R. Civ. P. 56 and CDIL Local Rule 7.1(D). In support thereof, Defendants state as follows:

**INTRODUCTION**

Plaintiff Christopher Scott (#R31806) is an individual in the custody of the Illinois Department of Corrections (hereinafter "IDOC"). At all times relevant to this matter, Plaintiff Scott was housed at Western Illinois Correctional Center. [Exhibit A].

On June 30, 2022, Plaintiff Scott filed his two (2) count Complaint pursuant to 42 U.S.C. § 1983, with allegations that the Defendants violated his civil rights by propagating unconstitutional conditions-of-confinement. [Doc.1]. Specifically, Plaintiff Scott alleged that the Defendants are responsible for exposing him to "extreme cold" in the winter and "extreme heat" in the summer because of inadequate ventilation systems. [*Id.*]

On November 29, 2022, the Court issued its merit review order, wherein it was determined that Plaintiff had alleged sufficient facts to proceed on an Eighth Amendment conditions-of-

confinement claim against the named Defendants. [Doc.8].

Summary judgment should be rendered if the pleadings, discovery, disclosure materials and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (a). Defendants now move for summary judgment for the following reasons: (1) Plaintiff cannot establish that he was housed in conditions objectively sufficiently deleterious to violate the Eighth Amendment; (2) Plaintiff cannot establish that Defendants were deliberately indifferent to Plaintiff's complaints; (3) Defendants are protected by the doctrine of qualified immunity; (4) *respondeat superior* liability is not available in § 1983 actions; and (5) Defendants Greene, Robinson, and Hammers lacked the requisite personal involvement to be deemed responsible for violating any of Plaintiff's civil rights. Finally, Plaintiff cannot recover punitive damages as he cannot show that any of the Defendants acted with ill will or reckless disregard. The above reasons present ample justification for entry of summary judgment in favor of Defendants.

## UNDISPUTED MATERIAL FACTS

1. Plaintiff, Christopher Scott (#R31806), is an individual in custody of the IDOC who at all times relevant to his complaint was housed at Western. [Doc. 1 & Exhibit A-Living Unit History, 000658-000660].

2. From January 13, 2020 through June 21, 2022, Plaintiff was assigned nine (9) different housing cells. Specifically, from January 13, 2020 until January 20, 2020, Plaintiff was housed in cell 3: A:58: L1, which is located in the disciplinary unit. Plaintiff stated that the cell had adequate heating and working hot water. [Doc. 1, pg. 18 & Exhibit A, 000658-000660].

3. From January 20, 2020 through January 22, 2020, Plaintiff was housed in cell 3: A:37: L1. Afterwards, from January 22, 2020 through February 4, 2020, Plaintiff was housed in cell

3:A:64:L1. Thereafter, from February 4, 2020 through February 12, 2020, Plaintiff was assigned cell 3:A:62:L1. Then from February 12, 2020 through June 13, 2021, Plaintiff was housed in cell 2:D:72: U1 and from June 13, 2021 through June 18, 2021, Plaintiff was housed in cell 2:D:36: L1. Afterwards, Plaintiff went back to 2:D:72: U1 on June 18, 2021 and remained in that cell until moving to 2: B:27: U1 on January 13, 2022. Finally, Plaintiff was housed in 3:A:52: L1 from January 16, 2022 to February 4, 2022. The final relevant move is that Plaintiff was housed from February 4, 2022 through June 27, 2022 in cell 1: A:63: L1. [Exhibit A, 000658-000660 & Exhibit F-Deposition, pgs. 30-32].

4. Plaintiff notified placement of alleged deficiencies in cell 3:A:64: L1 on February 1, 2020, shortly thereafter, on February 4, 2020, Plaintiff was moved to cell 3:A:62: L1. [Exhibit F-Deposition, pgs. 39-40].

5. Defendant Brittany Greene has been the Warden of Western Illinois Correctional Center since January 16, 2021. [Doc. 1; Exhibit G- Responses to Plaintiff's First Set of Interrogatories, pg. 1 & Exhibit H- Declaration of Brittany Greene].

6. Defendant Justin Hammers is the former Warden at Western. Specifically, Defendant Hammers served as Warden from January 2020 to October 2020. [Doc. 1; Exhibit G- Responses to Plaintiff's First Set of Interrogatories, pg. 10 & Exhibit K- Declaration of Justin Hammers].

7. Defendant James Robinson has been the Chief Engineer at Western since 2015. [Doc. 1; Exhibit G- Responses to Plaintiff's First Set of Interrogatories, pg. 18 & Exhibit J- Declaration of James Robinson].

8. Defendant Robinson relies upon the work order system to notify him of any perceived issues with housing cells. After searching his records, Defendant Robinson produced the following

relevant work orders. [Exhibit I- Work Orders, 000824-000826 & Exhibit J].

9. Further, Western Illinois Correctional Center uses radiant heaters that are connected in series, as such, if the heat is not working in one cell, other cells within the cell house would also lack heat. [Exhibit J].

10. Defendant Ricky Foreman has been employed by the IDOC at Western since January 2015 and is currently a Lieutenant, a role that he has been in since 2020. [Doc. 1 & Exhibit G- Responses to Plaintiff's First Set of Interrogatories, pg. 27].

11. Defendant Randall Hettinger has been employed as a Correctional Officer with the IDOC at Western since 2012. Since 2019, he has worked as a correctional sergeant. [Doc. 1 & Exhibit G- Responses to Plaintiff's First Set of Interrogatories, pg. 35].

12. On June 3, 2020, Defendant Hammers issued bulletin #20-18. This bulletin provided for protocols when the heat index reached 85°F or above. The protocols called for ensuring cold water and ventilation systems were operable, passing out ice and alerting medical staff to help identify any inmates that may be susceptible to heat-related illnesses. Additionally, the frequency of showers were increased and staff made sure fans were available. [Exhibit C- Heat Related Illness Bulletin, 000810-000812, Exhibit B- ARB Grievances at 000376 & Exhibit F-Deposition, pg. 18:2-24].

13. Western has a pattern and practice of measuring and recording the temperatures on the housing units every shift within their shift reports. [Exhibit E-Shift Reports, 001659-003432].

14. Plaintiff cited temperature measurements ranging from 89 degrees Fahrenheit on June 12, 2021 to 4 degrees Fahrenheit on January 20, 2020. Plaintiff obtained the temperatures measurements from the Weather Channel™, which reports external temperatures. [Doc. 1, pgs. 14, 18 & Exhibit F-Deposition, pg. 27].

15. Plaintiff was issued a fan to help alleviate warm weather. [Exhibit F-Deposition, pg. 16:13-25 & pg. 17].

16. Plaintiff did not personally speak with Defendants Greene, Hammers or Robinson with regard to his conditions of confinement or concerns thereof. [Exhibit F- Deposition, pg. 43].

17. Plaintiff was regularly seen and examined by healthcare providers. [Exhibit D- Medical Records, bates stamped 000852-001005].

## SUMMARY JUDGMENT STANDARD

Summary judgment should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The plain language of Fed. R. Civ. P. 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is entitled to a judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof. *Celotex Corp. v. Catrett,* 477 U.S. 317, 319 (1986). Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted. This materiality inquiry is independent of and separate from the question of the incorporation of the evidentiary standard into the summary judgment determination. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 244 (1986).

> It is not, as parties opposing summary judgment are fond of pointing out, a vehicle for resolving factual disputes. And because summary judgment is not a paper trial, the district court's role in deciding the motion is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial. The parties, in turn, bear a concomitant burden to identify the evidence that will facilitate this assessment. Thus, as Fed. R. Evid. 56(e) makes clear, a party opposing summary judgment may not rely on the allegations of [his] pleadings.

*Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 919 (7th Cir. 1994).

Ultimately, "Fed. R. Civ. P. 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Beard v. Banks*, 548 U.S. 521, 524 (2006).

## ARGUMENT

The Eighth Amendment prohibits prison conditions which cause the "unnecessary and wanton infliction of pain." *Patterson v. Gilmore,* 974 F.2d 1340 (7th Cir. 1992) (unpublished) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)). A prisoner's inconvenience and discomfort, however, both fall outside the Eighth Amendment. *Id*. (citing *Caldwell v. Miller*, 790 F.2d 589, 600-01 (7th Cir. 1986)). An Eighth Amendment claim has two components – objective and subjective. To satisfy the objective component, "the deprivation alleged must be, objectively, "sufficiently serious.'" *Henderson v. Sheahan*, 196 F.3d 839, 845 (7th Cir. 1995) (citing *Farmer v. Brennan,* 511 U.S. 825, 834 (1994)). "Therefore, 'extreme deprivations are required to make out a conditions-of-confinement claim.'" *Id*. (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). It is a fact-intensive inquiry to analyze whether an alleged deprivation stripped the inmate of the "minimal civilized measure of life's necessities." *Farmer v. Brennan,* 511 U.S. 825, 834 (1994); *see also Gillis v. Litscher*, 468 F.3d 488, 492-93 (7th Cir. 2006). While constitutionally adequate

confinement is required, "inmates cannot expect the amenities, conveniences and services of a good hotel." *Harris v. Fleming,* 839 F.2d 1232, 1235 (7th Cir. 1988).

I.     PLAINTIFF CANNOT SHOW THAT HE WAS HOUSED IN CONDITIONS THAT WERE OBJECTIVELY SUFFICIENTLY DELETERIOUS AS TO VIOLATE THE EIGHTH AMENDMENT.

Plaintiff Scott's theory of the case is that the above-named Defendants are responsible for incarcerating him in conditions that he alleges were inhumane, over a period of approximately thirty (30) months from January 13, 2020 to June 16, 2022. [*See* Doc. 1]. More specifically, Plaintiff Scott alleges that the Defendants failed to protect him from "extreme low temperatures, failed to provide Plaintiff with a room with adequate heat, a window that properly seals [,] Plaintiff room had no working hot water [and] no hot showers." [sic] [*Id*. at pg. 18]. Further, Plaintiff alleges that Defendants exhibited deliberate indifference to his conditions of confinement because they exposed him to "excessive heat." [*Id*. at pg. 44].

Defendants maintain Plaintiff was not subjected to extreme heat or cold, and further, the facts do not rise to a violation of his Eighth Amendment rights. While Plaintiff cites various alleged temperatures, the key fact is the temperatures cited by Plaintiff Scott are derived from the Weather Channel™, which provides temperature readings of the Mount Sterling, Illinois vicinity utilizing weather satellites and other means while the temperatures provided by the Defendants are derived from laser thermometers used inside the Western Illinois Correctional Center cellhouses. [*See* Doc. 1, pgs. 14, 18, Doc. 1-4, pg. 2; Exhibit E, Exhibit F, pg. 27 & Exhibit J]. Therefore, comparing the outside temperature in Mount Sterling, Illinois to cell house temperatures within Western Illinois Correctional Center is essentially akin to comparing pineapples to apples, both are fruit, but are inherently different. Because these two readings are of different areas- one external and the other, standard business logs detailing specific interior locations, i.e. the cellhouses, a material

dispute of fact does not exist. [*See* Doc. 1 & Exhibit E]. Indeed, "district courts within the Seventh Circuit have ruled no question of fact exists when Plaintiff's own self-serving testimony is blatantly contradicted by the record." *See, e.g., Rowe v. DeRosa*, 2018 WL 502658, at *2 n.3 (E.D. Wis. 2018) (medical records blatantly contradicted inmate's claim he did not receive his medication); *Davis v. Gee*, 2017 WL 2880869, at *5 (W.D. Wisc. 2017) (medical records blatantly contradicted inmate's claim he received no medical treatment); *Redman v. Doehling*, 2017 WL 6501910, at *8 (E.D. Wis. 2017) (no genuine question of material fact where inmate claimed defendants doctored his medical records); *Boyce v. Obaisi*, 2015 WL 5432137, at *2 (N.D. Ill. 2015) ("the Court will not consider [inmate's] attempts to challenge the validity of medical records and entries in the medical records because he does not present any contrary evidence"); *Walker v. Peters*, 863 F. Supp. 671, 673 (N.D. Ill. 1994) ("Despite [inmate's] unsupported assertions to the contrary, the medical treatment for his numerous physical ailments was *never* cancelled or interrupted.")

For the sake of brevity, Defendants point out several instances where Plaintiff Scott's self-serving allegations are contradicted by the record. First, Plaintiff Scott states that on January 20, 2020, at 5:30 p.m., he was moved to cell 3A:37, and he asserts that the cell was "extremely cold." [Doc. 1, pg. 18]. However, according to the shift report from January 20, 2020, the lowest recorded temperature was 67°F. [*See* Exhibit E, 001659]. Second, Plaintiff Scott alleges that on January 22, 2020, he was moved to cell 3A:64[1] and the window could not close making the cell "extremely cold." [Doc. 1, pg. 25 & Exhibit A]. Plaintiff states that the window could not close and the cell was "extremely cold" with temperature readings of 28°F, citing the Weather Channel™ external reports. [Doc. 1, pg. 25]. However, the lowest temperature recorded in the shift report for that day

---

[1] Plaintiff was housed in cell 3A:64 from January 22, 2020- February 4, 2020.

Case No. 22-cv-3116-SLD

Page **8** of **20**

in the interior of Western Illinois Correctional Center was 67°F. [Doc. 1, pg. 23 & Exhibit E, at 001660-001665]. A third instance comes from Plaintiff Scott's allegation that "[o]n February 15, 2020 at 12:30 pm [,] temps were 23°F and lower." [Doc. 1-2, pg. 5]. Plaintiff further stated that he complained to the healthcare unit staff about his cell being cold. However, notably absent from the medical record of the visit that day are any mentions of Plaintiff complaining about cold temperatures to the healthcare staff. [*See* Exhibit D]. Moreover, the shift report from February 15, 2020, has the lowest temperature for the interior of the prison recorded as 67°F. [Exhibit E, at 001742].

Count two (2) of Plaintiff Scott's Complaint covers the summer months. The record establishes that Plaintiff was mainly housed in cell 2:D:72: U1 from February 12, 2020 through December 8, 2021. [Exhibit A]. Plaintiff states that on July 7, 2020, "temps reached 84°F feeling higher due to the rooms are enclosed [and] equipped with a steel door [and] small screen there is no way air can leave out, the heat coming in from the sun outside shines through the window making it severely hot [and] humid on the top tier." [sic] [Doc. 1-3, pg. 3]. Again, Plaintiff cites the external temperatures reported by the Weather Channel™. Here, however, the shift report from that date indicates a high temperature reading of 72°F at 8:07 p.m. [Exhibit E, 002173]. Further, citing the external temperature reports, on July 25, 2020, Plaintiff writes that "temps were 89°F humidity feels like 98°F." [Doc. 1-3, pg. 6]. The records demonstrate that the highest recorded temperature on Plaintiff Scott's housing unit that day was 87.3°F at 6:10 pm. [Exhibit E, 002233]. Finally, on June 12, 2021, Plaintiff wrote that, "temps were 89°F feels like 96°F with humidity. Hotter in the rooms with no air circulation/ventilation that works." [sic] [Doc. 1-4, pg. 3]. However, the records contradict Plaintiff by showing the recorded temperature on his housing unit was 71°F at 7:12 pm. [Exhibit E, 003210]. In sum, the temperatures contained in the cell logs

demonstrate Plaintiff was not subjected to extreme temperatures. Further, while there is a discrepancy between Plaintiff's temperatures and those cited by Defendants, there is not a dispute of material fact as Plaintiff is citing reported external temperatures for the Mount Sterling area whereas Defendants specifically cite the daily temperature logs taken within the cell houses and prison.

Even if Plaintiff Scott's assertions were to be given deference, Defendants argue that he still does not meet the legal threshold for objective unconstitutionality as courts have found that isolated incidents of exposing inmates to cold [or hot] weather for hours at a time does not constitute an Eighth Amendment claim. *See, e.g., Dixon v. Godinez,* 114 F.3d 640, 643 (7th Cir. 1997); *Dunn v. FNU Mitchell*, No. 3:14-cv719, 2015 U.S. Dist. LEXIS 8549 (W.D.N.C. Jan. 26, 2015); *Ray v. Schoo,* No. CV 10-942, 2014. Here, Plaintiff cites limited incidents of brief alleged exposures to warm or cool weather. Based on the evidence available in this matter, these facts are not sufficient to maintain an Eighth Amendment conditions of confinement claim.

Finally, Plaintiff Scott's allegations of being deprived hot water, hot showers along with allegedly not having his window seal fixed cannot be substantiated, as the records reflect that a work order was submitted concerning hot water in cell 2D:72 on February 6, 2020, however, Plaintiff Scott was not housed in that cell until February 12, 2020. [*See* Exhibits A & I]. Moreover, a second work order concerning cell 3A:37 mentions hot water issues and is dated September 15, 2021, however, Plaintiff Scott was not housed in that cell, as he was assigned cell 2D:72 at the time. [*See Id*.] A final work order dated May 4, 2022, mentions no hot water in cell 2D:72, but by that time, Plaintiff Scott was being housed in cell 1A:63. [*Id*.].

In sum, even the most generous reading of Plaintiff Scott's Complaint does not lead to a finding that he was held in conditions egregious enough to rise to the level of unconstitutionality as the

standard is extreme deprivations. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Therefore, Defendants are entitled to summary judgment.

II.   PLAINTIFF CANNOT SHOW THAT DEFENDANTS WERE DELIBERATELY INDIFFERENT TO HIS COMPLAINTS RELATED TO HIS CELL CONDITIONS.

The second requirement that an inmate must prove in order to demonstrate an Eighth Amendment violation based on conditions of their confinement is that the Defendants acted with "deliberate indifference." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). Subjective recklessness as used in the criminal law is a familiar and workable standard that is consistent with the Cruel and Unusual Punishments Clause, as interpreted in Supreme Court case law, and is adopted as the test for "deliberate indifference" under the Eighth Amendment. *Id*.  However, "reasonable measures taken to avert known risks will insulate a prison official from Eighth Amendment liability, even if those measures proved unsuccessful." *Brown v. Ryker,* No. 10-cv-397-MJR-SCW, 2012 U.S. Dist. LEXIS 80861, at *10 (S.D. Ill. June 12, 2012) (citing *Bagola v. Kindt*, 131 F.3d 632, 646 (7th Cir. 1997)).

Plaintiff is foreclosed from carrying his burden in showing that Defendants were deliberately indifferent because the evidentiary record demonstrably shows that Defendants took measures to alleviate Plaintiff Scott's concerns. For example, Plaintiff alleges that on July 25, 2020, the temperature was 89°F and with humidity it felt like 98°F. [Doc. 1-3, pg. 6]. The shift report from that day noted a high temperature within the cell houses of 94.8°F, which triggered heat mitigation measures such as passing out ice two times per day, keeping a close eye on offenders who are behind solid doors, and increasing frequency of showers. Additionally, individuals in custody were provided fans.  [Exhibit C, 000813-000814; Exhibit E, at 002230 & Exhibit F, pg. 16:13-25 & pg. 17].

In another instance, Plaintiff Scott states in his Complaint: "On February 4th 2020[,] temp

were 28°F feels like 23°F by the weather channel. Placement received Exhibit #25 and authorized Plaintiff to move to room #62 at 5:40 p.m. The defendants may try and take the credit." [sic] [Doc. 1-2, pg. 2].

Exhibit 25 that Plaintiff refers to, is a request to Placement wherein Plaintiff requested that he be moved out of cell 3: A:64, and is dated February 1, 2020. [Doc. 1-5, pg. 24]. The record substantiates that shortly after his request was submitted, Plaintiff Scott was moved to cell 3: A:62 on February 4, 2020. [Exhibit A, 000659]. There is also a response from a grievance counselor noting that Plaintiff was moved to a different cell as requested. [Exhibit B, pg. 88].

Additionally, it is probative to note the number of different cells that Plaintiff Scott was housed in during the relevant timeframe. The record shows that Plaintiff Scott resided in at least nine (9) different housing cells during the relevant period. Inasmuch, it would be one thing if the facts led to a credible inference of Plaintiff being left in a cell with inhumane conditions for extended periods of time and his requests to move were ignored or never investigated. However, that is simply not the case here as the record demonstrates when Plaintiff flagged an issue using the proper channels, such as a grievance form or writing to the Placement team, Plaintiff was moved from the cell in question. [*See* Exhibit B & Exhibit F, pgs. 39-40]. Further, temperatures were actively monitored and when weather advisories were in effect, mitigation protocols were enacted and if abnormal temperatures were recorded, the facility Chief Engineer, Defendant Robinson was notified. [*See* Exhibits C, E & J].

Finally, Plaintiff Scott alleges that he wrote numerous grievances to Western Correctional Center officials about the alleged inhumane conditions in his housing various housing cells. Defendant Robinson in his capacity as chief engineer fielded most of the inquiries from the grievance officer and the grievance records are replete with instances of Defendant Robinson

responding by taking affirmative measures such as checking to see if a work order was submitted or in some cases going to Plaintiff's cell house and personally making sure that the ventilation system was operable. [*See* Exhibits G & J].

Lastly, case law holds that a variety of factors that need to be considered when evaluating allegations of unconstitutional conditions-of-confinement centering on allegations of uncomfortable temperatures, factors such as, the severity of the temperatures, the duration that the individual in custody had to remain in the alleged unconstitutional environment and whether there were alternative means to combat the temperature extremes. *See* Dixon *v. Godinez,* 114 F.3d 640, 644. The fact that there were protocols in place to mitigate the effects of uncomfortable temperatures as detailed above and that Defendants did take measures attempting to alleviate alleged temperature extremes reinforces that alternative means to combat the temperatures were deployed and Defendants undertook actions, even if unsuccessful to alleviate Plaintiff's concerns. Inasmuch, Plaintiff Scott can produce no evidence to substantiate his claims that Defendants were deliberately indifferent. Wherefore, this instant matter is subject to summary judgment in favor of Defendants.

III. DEFENDANTS GREENE, HAMMERS LACK THE REQUISITE PERSONAL INVOLVEMENT TO BE HELD LIABLE FOR ANY ALLEGED VIOLATIONS OF PLAINTIFF'S CONSTITUTIONAL RIGHTS.

A defendant cannot be held liable under 42 U.S.C. § 1983, unless a plaintiff can demonstrate that the defendant caused or participated in the alleged constitutional violation. *McBride v. Soos*, 679 F.2d 1223, 1227 (7 th Cir. 1982). A causal connection, or affirmative link, between the misconduct complained of and the official being sued is necessary. *Rizzo v. Goode*, 423 U.S. 362, 371 (1976). Without a showing of direct responsibility for the improper action, liability will not lie. *Wolfe-Lillie v. Sonquist*, 699 F. 2d 864, 869 (1983).

A. <u>Defendant Justin Hammers had no personal involvement in any alleged violations occurring after October 2020.</u>

Plaintiff Scott admitted in his deposition that he has never personally talked with or interacted face-to-face with Defendant Hammers, however, he alleges in his Complaint that he sent a letter to Defendant Hammers. [*See* Doc. 1-3, pg. 5 & Exhibit F, pg. 43].

Defendant Hammers does not recall receiving such a letter from Plaintiff, however, his pattern and practice would have been to forward the letter to the appropriate department head. [Exhibit K]. As such, a Court in the Southern District of Illinois considered the issue of administrator liability in the circumstance that the administrator delegated tasks to subordinates, and agreed that administrators are allowed to delegate and defer to subordinates without subjecting themselves to liability. *Wallace v. Jeffreys*, No. 17-cv-576-DWD, 2023 U.S. Dist. LEXIS 28725, at *42 & 43 (S.D. Ill. Feb. 20, 2023).

Heretofore, it is well established that in order to find a defendant individually liable, he must be "personally responsible for the deprivation of a constitutional right." *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (quoting *Chaves v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001)). Plaintiff Scott's contention that he filed grievances and submitted letters addressed to Defendant Hammers is insufficient to assess liability upon Defendant Hammers. *See Jones v. Drew*, 221 F.App'x 450, 454 (7th Cir. 2007) (affirming summary judgment where there was no evidence the warden personally received or read communications due to delegating review of inmate complaints to others within the warden's office). As such, it is clear that Defendant Hammers lacked any personal involvement in any alleged constitutional deprivation. Lastly, it is worth noting that Defendant Hammers tenure as Warden of Western Illinois Correctional Center ran from January 2020 through October 2020, thereby any allegations after October 2020, could not be addressed by Defendant Hammers. [Exhibit G at pg. 10 & Exhibit K]. Additionally, under

Section 1983, *respondeat superior* liability is not authorized. *Vinning-El v. Evans*, 657 F.3d 591, 592 (7th Cir. 2011). Hence, when it comes to Defendant Hammers, he is entitled to a judgment in his favor due to a lack of personal involvement and the fact that *respondeat superior* liability is not available.

B. <u>Defendant Brittany Greene lacked the requisite personal involvement to be liable of a constitutional rights deprivation.</u>

Plaintiff Scott notes that on April 29, 2021 and May 28, 2021, Defendant Greene came to his cell house, however, she did not go up to the upper level where Plaintiff was housed. Since he could not talk directly to Defendant Greene, he alleges that he spoke with a Major Bradshaw. [*See* Doc. 1-4, pg. 2].

Similar to Defendant Hammers, Defendant Greene contends "[l]iability depends on each defendant's knowledge and actions, not on the knowledge or actions of persons they supervise." *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009). Additionally, "[f]or a claim of supervisory liability, a plaintiff may only prevail by showing that a supervisor (1) knew about the conduct and (2) facilitated it, approved it, condoned it, or turned a blind eye for fear of what could be seen." *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017), *citing Matthews v. City of E. St. Louis*, 675 F.3d 703,708 (7th Cir. 2012).

The evidentiary record is inconsistent with Plaintiff Scott's allegation that Defendant Greene bears responsibility for any alleged inhumane conditions-of-confinement as it is clear that Defendant Greene and Plaintiff never interacted face-to-face. [Exhibit H]. Further, Defendant Greene also relied upon a pattern and practice of forwarding written correspondence, such as grievances and requests slips, to the appropriate department personnel to address. [*Id.*]. It is also worth noting that not every grievance bearing Defendant Greene's signature was personally reviewed by her, as only the grievances containing her signature without initials next to it were

personally reviewed [*Id.*]. Finally, it is worth noting that Defendant Greene's tenure as Warden began on January 16, 2021. [Exhibits G & H]. Therefore, Defendant Greene lacks the requisite personal involvement to be deemed liable for a constitutional rights deprivation concerning any alleged conditions-of-confinement issues prior to January 16, 2021. Further, Plaintiff Scott specifically mentions writing grievances to Defendant Greene however, "writing a letter to an individual is not in itself enough for a person to be held liable for a constitutional violation." *See, e.g., Volk v Coler,* 638 F.Supp 1540, 1549 (C.D. Ill. July 8, 1986) aff'd, 845 F.2d 1422 (7th Cir. 1988).

Therefore, Defendant Greene is entitled to summary judgment because she lacked the requisite personal involvement to be assessed liable for any inhumane conditions-of-confinement. Further, *respondeat superior* is not applicable in Section 1983 cases.

IV.   QUALIFIED IMMUNITY IS APPLICABLE.

Defendants are entitled to summary judgment because they are protected by the doctrine of qualified immunity. Under § 1983, a defendant is entitled to qualified immunity from money damages for their discretionary actions if their conduct does not violate any clearly established constitutional rights. *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982). In *Saucier v. Katz*, 533 U.S. 194, 200 (2001), the United States Supreme Court mandated a two-step sequence for resolving government officials' qualified immunity claims. First, a court must decide whether the facts that a plaintiff has alleged (*See* Fed. R. Civ. P 12(b)(6), (c)) or shown (*See* Fed. R. Civ. P. 56, 60) make out a violation of a constitutional right. *Pearson v. Callahan*, 129 S. Ct. 808, 815-16 (2009) (*citing Saucier*, 533 U.S. at 201). "Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson*, 129 S. Ct. At 816. The test is purely legal, without regard to the subjective motivations

of the defendant. *Id*. at 818-19; *Mitchell v. Forsyth*, 472 U.S. 511(1985); *Davis v. Scherer*, 468 U.S. 183, 191 (1984).

The burden of establishing the existence of such a clearly established constitutional right is on plaintiff. *McGrath v. Gillis*, 44 F.3d 567, 570 (7th Cir. 1995) (*citing Rakovich v. Wade*, 850 F.2d 1180, 1209 (7th Cir. 1988)). He must point out a closely analogous case that establishes that he had a right to be free from the specific conduct alleged to violate the general constitutional right at issue. *Rice v. Burks*, 999 F.2d 1172, 1174 (7th Cir. 1993). Plaintiff must also establish that the alleged violated rights were so clear that a reasonable official would understand that what she is doing at the time violates the right. *McGrath*, 44 F.3d at 570; *See also Anderson v. Creighton*, 483 U.S. 635 (1987).

As noted *supra*, Defendants lack sufficient personal involvement to maintain a claim against them, and further, the facility did take steps to attempt to alleviate any identified unusually warm or cold the temperatures. Additionally, as these conditions were not extreme enough to rise to an Eighth Amendment violation, to find these Defendants liable for a constitutional rights violation, given these facts, would be a radical departure from current legal precedence. As such, Defendants are entitled to qualified immunity and the claims should be dismissed.

V.      SOVEREIGN IMMUNITY/PLRA

Defendants are entitled to summary judgment on Plaintiff's claims for injunctive relief because the Eleventh Amendment bars suits for injunctive relief against the state absent a showing of ongoing Constitutional violation. Federal courts may only grant injunctive relief upon a finding that an ongoing constitutional violation exists. *Al-Alamin v. Gramley*, 926 F.2d 680, 685 (7th Cir. 1991). Injunctive and other equitable relief can be granted against a state official without violating the Eleventh Amendment when the official is acting in violation of the Federal Constitution. *Ex*

*parte Young*, 209 U.S. 123, 159 (1908). However, any equitable relief granted must be prospective in nature. *Edelman v. Jordan*, 415 U.S. 651 (1974).

Since Plaintiff cannot provide any evidence of ongoing violations of federal law and neither can he argue that the current conditions-of-confinement were similar to the conditions alleged in his Complaint, injunctive relief is not appropriate.

VI.     PUNITIVE DAMAGES NOT APPROPRIATE AS THERE IS NO EVIDENCE THAT DEFENDANTS HARBORED ILL WILL TOWARDS PLAINTIFF.

Plaintiff Scott seeks punitive damages in the amount of $500,000.00 against each Defendant jointly and severally. [Doc. 1-5, pg. 8]. However, it is well established that "[p]unitive damages are awarded to punish and deter reprehensible conduct and may be awarded under 42 U.S.C. § 1983 upon a showing of evil motive or intent, or reckless or callous indifference to the federally protected rights of others." *Owens v. Lamb*, No. 17-cv-997-NJR, 2020 U.S. Dist. LEXIS 53497, at 14 (S.D. Ill. Mar. 27, 2020). (internal quotation marks omitted) (internal citations omitted). "Proof of a bad faith claim does not necessarily make the award of punitive damages appropriate. The intent necessary to maintain an action for bad faith is distinct from what must be shown to recover punitive damages. In order to recover punitive damages, a plaintiff must show (1) evil intent deserving of punishment or of something in the nature of special ill-will; or (2) wanton disregard of duty; or (3) gross or outrageous conduct." *Talmage v. Harris*, 486 F.3d 968, 971 (7th Cir. 2007).

As established *supra,* Plaintiff cannot show that the Defendants acted with any subjective motivation that can meet the threshold for a Court finding that "evil intent deserving of punishment" or "wanton disregard of duty" occurred. *See id*. Hence, the Defendants are entitled to summary judgment on Plaintiff's money damages claim for punitive damages.

**CONCLUSION**

Defendants are entitled to summary judgment because the law and the facts demonstrate that Plaintiff Scott cannot satisfy the two-part test necessary to sustain his Eighth Amendment conditions of confinement claim against them. The conditions of Plaintiff's confinement were not objectively so serious as to constitute inhumane conditions and Plaintiff cannot establish that the defendants possessed the necessary state of mind. Plaintiff similarly cannot show that Defendants Greene and Hammers had the requisite personal involvement in any alleged constitutional violation. Furthermore, qualified and sovereign immunity are applicable which bar any recovery for Plaintiff and finally, Plaintiff Scott cannot show that any of the Defendants acted with evil intent, which bars any recovery for punitive damages.

*WHEREFORE*, for the above and foregoing reasons, Defendants Greene, Hettinger, Robinson, Hammers and Foreman respectfully request this Honorable Court grant their Motion for Summary Judgment and for any such other relief as the Court deems just and proper.

Respectfully submitted,

BRITTANY GREENE, RANDELL HETTINGER, JAMES ROBINSON, JUSTIN HAMMERS, and RICKY FOREMAN,

Defendants,

KWAME RAOUL, Illinois Attorney General,

Attorney for Defendants,

By: /s/*Dowin Coffy*
Dowin Coffy, #6331704
Assistant Attorney General
500 South Second Street
Springfield, Illinois 62701
Phone: (217) 782-5022
Fax: (217) 524-5091
Email: Dowin.Coffy@ilag.gov
gls@ilag.gov

# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF ILLINOIS
# SPRINGFIELD DIVISION

| | |
|---|---|
| CHRISTOPHER SCOTT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| -vs- | ) No. 22-CV-3116-SLD |
| | ) |
| WATERSTRAAT, *et al.* | ) |
| | ) |
| Defendants. | ) |

## CERTIFICATE OF SERVICE

I hereby certify that on December 29, 2023, the foregoing document, *Defendants' Motion for Summary Judgment and Memorandum of Law in Support Thereof,* was electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

NONE

and I hereby certify that on the same date, I caused a copy of the same to be mailed by United and I hereby certify that on the same date, I caused a copy of the same to be mailed by United States Postal Service, in an envelope, properly addressed and fully prepaid, to the following non-registered participant:

Christopher Scott
R31806
Western Illinois Correctional Center
Inmate Mail/Parcels
2500 Rt 99 South
Mt Sterling, IL 62353

Respectfully Submitted,

By: /s/ Dowin Coffy
Dowin Coffy, #6331704
Assistant Attorney General
500 South Second Street
Springfield, Illinois 62701
Phone: (217) 782-5022
Fax: (217) 524-5091
Email: Dowin.Coffy@ilag.gov